[Cite as *Nick v. Cooper*, 2016-Ohio-5678.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Philipp D. Nick et al.,                                  :

      Plaintiffs-Appellees,                     :

                                    No. 15AP-1109
v.                                                       :      (C.P.C. No. 12CVH-10-12749)

Frederick A. Cooper et al.,                              :      (REGULAR CALENDAR)

      Defendants-Appellants.                    :

D E C I S I O N

Rendered on September 6, 2016

**On brief:** *Murray Murphy Moul + Basil LLP, Joseph F. Murray, Brian K. Murphy*, and *Geoffrey J. Moul*, for appellees. **Argued:** *Joseph F. Murray.*

**On brief:** *The Tyack Law Firm Co., LPA, James P. Tyack*, and *Ryan L. Thomas*, for appellants. **Argued:** *Ryan L. Thomas.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendants-appellants, Fredrick A. Cooper and Katherine Cooper, appeal from a judgment of the Franklin County Court of Common Pleas in favor of plaintiffs-appellees, Philipp D. Nick, Ellen H. Hardymon, Suzanne K. Nick irrevocable family trust one, Suzanne K. Nick irrevocable family trust two, Thomas F. Havens irrevocable family trust one, and Thomas F. Havens irrevocable family trust two. For the reasons that follow, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   On October 9, 2012, appellees filed a civil action against appellants alleging breach of contract, breach of fiduciary duty, fraud, and civil conspiracy.  Appellees obtained service on appellants at appellants' address in Las Vegas, Nevada.

{¶ 3}   On November 8, 2012, attorney Mathew J. Burkhart entered an appearance on behalf of appellants and requested an extension of time to move or plead in response to the complaint.  On December 27, 2012, attorney Burkhart filed an answer on behalf of appellants.  Appellants submitted a notice of substitution of counsel on January 15, 2013, informing the court that attorney Burkhart was withdrawing from the case and that attorneys Quentin F. Lindsmith and James P. Schuck of the law firm Bricker & Eckler had undertaken representation of appellants.

{¶ 4}   On March 13, 2013, the trial court issued an order granting the parties' joint motion to stay proceedings in the case "pending the full performance of the parties under the Settlement Agreement."  On August 7, 2013, appellees filed both a motion to lift the stay and a motion for leave to file an amended complaint.  The stated grounds for the motion to lift the stay were that the parties' settlement agreement "terminated by its terms * * * on or before July 31, 2013."  (Mot. to Lift Stay at 1.)  On the following day, the trial court reinstated the case to the active docket.  On September 25, 2013, appellees filed an amended complaint.  A copy of the amended complaint was served on appellants' counsel.  Appellants, by and through attorney Lindsmith, filed an answer to the amended complaint on November 7, 2013.

{¶ 5}   On June 23, 2014, attorneys Lindsmith, Schuck, and the law firm Bricker & Eckler LLP moved the court to withdraw as counsel for appellants.  The stated grounds for the motion were as follows:

> Quintin F. Lindsmith and the law firm of Bricker & Eckler LLP ("Counsel") were retained to represent the [appellants] in January 2013.  When first retained, Counsel understood that he would largely serve as local Counsel with the primary representation being performed by the firm of Gordon Silver located in Las Vegas, Nevada.
>
> * * *

> [Appellees] have recently indicated that they intend to recommence the active prosecution of their claims in this matter and have served correspondence requesting follow-up information as to written discovery and requesting depositions of the [appellants]. Such activity has been followed by (1) being informed that the Gordon Silver firm will not be taking the lead the [sic] role in the defense of this matter as previously indicated, (2) observing that the terms of Counsel's engagement by the Coopers is not being complied with, and (3) experiencing a failure of communication between the [appellants] and Counsel.

(Mot. to Withdraw at 2.)

{¶ 6} Attorney Lindsmith served a copy of the motion and memorandum in support on appellants by first class mail at the Franklin, Tennessee address listed in appellants' answer to the amended complaint. The trial court granted the motion to withdraw on August 5, 2014.

{¶ 7} On December 15, 2014, appellees filed a motion for partial summary judgment as to the fourth and fifth causes of action alleging fraud and breach of guarantee. The certificate of service indicates service by regular mail on appellants on December 15, 2014, at their Tennessee address. On January 12, 2015, appellees filed a "Notice of Completion of Briefing on Plaintiffs' Motion for Partial Summary Judgment." The certificate of service indicates service by regular mail on appellants on January 12, 2015, at their Tennessee address.

{¶ 8} Appellants did not respond to appellees' motion for partial summary judgment. On January 21, 2015, the trial court granted appellees' motion. On January 27, 2015, the trial court scheduled a hearing on the issue of damages to be conducted by a magistrate of the court on March 16, 2015. On February 3, 2015, Fredrick A. Cooper filed a pro se motion for relief from the judgment "pursuant to Civil Rule 60(A)." The trial court denied the motion for relief from judgment on March 9, 2015, concluding that "[d]efendant * * * does not raise any issue of clerical error in his motion."

{¶ 9} The magistrate issued an order on March 15, 2015, continuing the damages hearing because appellees' counsel had informed the court that appellant Fredrick A. Cooper had filed a bankruptcy petition. Thereafter, on March 18, 2015, the trial court stayed the proceedings due to the pending bankruptcy proceedings. On June 24, 2015,

appellees filed both a notice of voluntary dismissal of their first, second, third, and sixth causes of action and a motion to lift the bankruptcy stay. The trial court granted both motions and scheduled a damages hearing for July 23, 2015. Before the hearing could take place, appellants filed a notice of appeal to this court from the trial court's decision granting partial summary judgment. This court dismissed the appeal due to the lack of a final order on July 16, 2015.

{¶ 10} On July 22, 2015, James P. Tyack of Tyack, Blackmore, Liston & Nigh Co., L.P.A., entered an appearance as counsel for appellants. On July 23, 2015, the trial court conducted a hearing on the issue of damages. Appellants' newly retained counsel represented appellants at the damages hearing. Following the hearing, appellants filed a notice on July 29, 2015, informing the court that appellants did not intend to file proposed findings of fact and conclusions of law.

{¶ 11} The trial court issued its findings of fact and conclusions of law on August 5, 2015. Therein, the trial court noted "[d]efendants were given the opportunity to cross examine any witnesses of Plaintiffs, which they did participate in." (Nunc Pro Tunc Entry at 1.) Appellants filed a notice of appeal to this court from the trial court's August 5, 2015 judgment, but they later dismissed the appeal by filing a notice of voluntary dismissal.

{¶ 12} On October 15, 2015, appellants filed a Civ.R. 60(B) motion for relief from the trial court's August 5, 2015 judgment. The stated grounds for relief, supported by appellants' affidavits, were that appellants' failure to respond to the motion for summary judgment was the result of excusable neglect pursuant to Civ.R. 60(B)(1). On November 13, 2015, the trial court denied appellants' motion for relief from judgment.

{¶ 13} Appellants timely appealed to this court from the judgment of the trial court.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellants assign the following as trial court error:

> I. IT WAS AN ABUSE OF DISCRETION BY THE TRIAL COURT AND REVERSIBLE ERROR WHICH PREJUDICED DEFENDANTS-APPELLANTS TO DENY THEIR MOTION FOR RELIEF FROM JUDGMENT PURSUANT [TO] CIVIL RULE 60(B) WHEN THE EVIDENCE SUPPORTED THE CONCLUSION THAT APPELLANTS DEMONSTRATED

EXCUSABLE NEGLECT JUSTIFYING RELIEF FROM JUDGMENT

II. THE TRIAL COURT ABUSED ITS DISCRETION BY DISREGARDING THE SUPREME COURT OF OHIO'S MANDATE IN *COLLEY V. BAZELL* REGARDING WHAT FACTORS A TRIAL COURT MUST CONSIDER WHEN DETERMINING WHETHER DEFENDANTS-APPELLANTS' CONDUCT AMOUNTED TO EXCUSABLE NEGLECT UNDER CIVIL RULE 60(B)(1).

III. THE TRIAL COURT ACTED CONTRARY TO LAW, CONTRARY TO THE EVIDENCE, AND PREJUDICED DEFENDANTS-APPELLANTS WHEN IT DENIED THEM AN EVIDENTIARY HEARING UNDER CIVIL RULE 60(B) AFTER DEFENDANTS-APPELLANTS DEMONSTRATED GROUNDS FOR RELIEF FROM THE TRIAL COURT'S ENTRY GRANTING PARTIAL SUMMARY JUDGMENT, DATED JANUARY 21, 2015.

## III. STANDARD OF REVIEW

{¶ 15} Civ.R. 60(B) provides that a trial court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

{¶ 16} The rule requires the motion to be made "within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken." "A motion for relief from judgment under Civ.R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion." *Griffey v. Rajan*, 33 Ohio St.3d 75, 77 (1987). " 'The term "abuse of discretion" connotes more than an error of law

or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). When applying an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Kenison v. Kenison*, 10th Dist. No. 13AP-507, 2014-Ohio-315, ¶ 9, citing *Berk v. Mathews*, 53 Ohio St.3d 161, 169 (1990).

{¶ 17} To prevail under Civ.R. 60(B), the movant must show that (1) the movant has a meritorious defense or claim to present if relief is granted, (2) the movant is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) the motion is made within a reasonable time. *GTE Automatic Elec. v. ARC Industries*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. The movant must satisfy all three of these requirements to obtain relief. *State ex rel. Richard v. Seidner*, 76 Ohio St.3d 149, 151 (1996); *see also GTE Automatic Elec.* at 151 (finding that the requirements under Civ.R. 60(B) "are independent and in the conjunctive, not the disjunctive"). To warrant a hearing on a motion for relief from judgment, " 'the movant must allege operative facts that, if true, would be sufficient to establish each of the elements of the *GTE* test.' " *Kenison* at ¶ 10, quoting *Cunningham v. Ohio Dept. of Transp.*, 10th Dist. No. 08AP-330, 2008-Ohio-6911, ¶ 35.

## IV. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 18} In appellants' first assignment of error, appellants contend that the trial court abused its discretion when it denied appellants' motion for relief from judgment. We disagree.

{¶ 19} The dispositive issue with regard to appellants' motion for relief from judgment in this case is whether appellants' neglect was excusable for purposes of Civ.R. 60(B)(1). In *Kay v. Marc Glassman, Inc.*, 76 Ohio St.3d 18, 20 (1996), the Supreme Court of Ohio stated that "[t]he term 'excusable neglect' is an elusive concept which has been difficult to define and to apply." *Id.* In *Kay,* the Supreme Court further observed that "we have previously defined 'excusable neglect' in the negative and have stated that the inaction of a defendant is not 'excusable neglect' if it can be labeled as a 'complete

disregard for the judicial system.' " *Id.*, citing *GTE Automatic Elec.* at 153; *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 21 (1988), fn. 4.

{¶ 20} " '[T]he concept of "excusable neglect" must be construed in keeping with the proposition that Civ.R. 60(B)(1) is a remedial rule to be liberally construed, while bearing in mind that Civ.R. 60(B) constitutes an attempt to "strike a proper balance between the conflicting principles that litigation must be brought to an end and justice should be done." ' " *Colley v. Bazell*, 64 Ohio St.2d 243, 248 (1980), quoting *Doddridge v. Fitzpatrick*, 53 Ohio St.2d 9, 12 (1978), quoting 11 Wright & Miller, Federal Practice & Procedure 140, Section 2851. "The determination of whether excusable neglect occurred, must of necessity, take into consideration all the surrounding facts and circumstances." *Newman v. Farmacy Natural & Specialty Foods*, 168 Ohio App.3d 630, 2006-Ohio-4633, ¶ 23 (4th Dist.).

{¶ 21} Cases finding excusable neglect typically involve special circumstances that justify the neglect. *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 10th Dist. No. 14AP-640, 2015-Ohio-1368, ¶ 13. "Excusable neglect is not present if the party seeking relief could have prevented the circumstances from occurring." *Stuller v. Price*, 10th Dist. No. 02AP-29, 2003-Ohio-583, ¶ 52. " 'A trial court does not abuse its discretion in overruling a Civ.R. 60(B)(1) motion for relief from * * * judgment on the grounds of excusable neglect, if it is evident from all the facts and circumstances in the case that the conduct of the defendant, combined with the conduct of those persons whose conduct is imputed to the defendant, exhibited a disregard for the judicial system and the rights of the plaintiff.' " *Boling v. Dimeche & Vlado, Inc.*, 10th Dist. No. 07AP-146, 2007-Ohio-5795, ¶ 11, quoting *Griffey* at syllabus.

{¶ 22} In her affidavit in support of the motion for relief from judgment, appellant Katherine Cooper set forth the facts and circumstances surrounding appellants' failure to respond to the motion for summary judgment:

> 106. When Plaintiffs commenced this lawsuit in 2012, we immediately contacted Eric Hone of Gordon Silver located in Las Vegas, to assist us with submitting the necessary paperwork to Crum & Forster, the policyholder of our Director and Officer insurance policy, for coverage as we had done before.

* * *

108. In mid January 2013, Fred and I agreed to have Mr. Hone represent us for the limited and specific purpose to negotiate a settlement with Plaintiffs while Crum & Forster was processing the paperwork for our D&O policy coverage. Quintin Lindsmith of Bricker & Eckler, LLP was substituted and began serving as our counsel in this lawsuit.

109. During this time, mid January 2013, * * * [w]e were informed by Mr. Hone that all paperwork was submitted to Crum & Forster for coverage, but coverage at this juncture was not an overriding concern because it appeared we were on the verge of resolving the dispute.

* * *

111. On August 8, 2013, the Court reactivated this case at the request of Plaintiffs after the terms of the settlement agreement were not met.

* * *

113. Upon the reactivation of this case, we contacted Mr. Hone at Gordon Silver and inquired into the status of Crum & Forster providing us coverage and a defense to Plaintiffs' claims.

114. Mr. Hone represented that he would follow-up with Crum & Forster to determine the status of its coverage for the paperwork he told us he submitted in October of 2012.

115. In June of 2014, through conversations with Gordon Silver, we learned that Quintin Lindsmith would be withdrawing as counsel, but were assured by Mr. Hone that Crum & Forster would be providing us coverage and a defense.

116. Because Fred and I were without the financial ability to hire a lawyer to represent us, coverage under our D&O policy was imperative and we communicated this with Mr. Hone on a number of separate occasions.

117. On December 15, 2014, Plaintiffs submitted a Motion for Summary Judgment and according to the Certificate of

Service, the motion was mailed to our residence in Franklin Tennessee since we were without counsel at this time.

118. Neither Fred nor I received Plaintiffs' Motion for Summary Judgment.

119. In January of 2015, Fred and I received a pleading filed by Plaintiffs notifying us that the briefing on their Motion for Summary Judgment was completed. We were shocked to learn Plaintiffs filed a motion for summary judgment. This was the first time we learned about the Motion for Summary Judgment.

120. * * * We immediately contacted Mr. Hone at Gordon Silver for further information about coverage under our D&O policy. We likewise informed Mr. Hone the Plaintiffs had recently filed a motion for summary judgment and coverage was of the upmost importance.

121. Mr. Hone again represented to us that he would follow-up with Crum & Forster and again represented that Crum & Forster would provide coverage and a defense.

122. Unbeknownst to Fred and I, by the time we spoke with Mr. Hone in January of 2015, the Court had already granted Plaintiffs' Motion and entered a judgment against us on January 21, 2015.

* * *

124. After Fred submitted our Relief from Judgment, we spoke with Mr. Hone again and it was at this time he apologized and informed us that he had failed to promptly remit the necessary paperwork to Crum & Forster when the lawsuit was initially filed in October of 2012.

125. According to Mr. Hone, because he had failed to promptly send in the paperwork for D&O policy coverage, Crum & Forster denied coverage and that he had known this for some time, but never informed us because he was trying to have Crum & Forster change its position in regards to coverage, which it ultimately refused to do.

126. Fred and I would never have ignored or disregarded Plaintiffs' Motion for Summary Judgment. Prior to and following our discovery of the Motion, we immediately took

> steps to obtain representation under our D&O policy and were misled by Gordon Silver that we would receive a defense to the claims against us.[1]

(Katherine Cooper Aff. at 15-18.)

{¶ 23} The averments in appellants' affidavits, if taken as true, establish that appellants relied on attorney Hone's representations that their insurance carrier would defend them in this action. In our opinion, appellants' alleged reliance on attorney Hone's representations does not excuse their neglect in this case. It is evident from the affidavits that appellants had been pursuing coverage under their insurance policy for more than two years prior to the time the trial court entered judgment in this case. During this time period, appellants' insurance carrier never proffered a defense to this action. Appellants do not claim that attorney Hone ever told them that their insurance carrier had agreed to provide them with a defense to this action. Nor do appellants claim that attorney Hone gave them any time frame for obtaining coverage and a defense. Moreover, appellants' affidavits support the conclusion that appellants did not rely on their carrier to supply a defense to this action. Rather, appellants initially hired attorney Burkhart to represent them and, shortly thereafter, hired attorney Lindsmith. Under the circumstances, it was inexcusable for appellants to sit back and wait for their carrier to supply a defense in this action after attorney Lindsmith withdrew from the case, regardless of the representations made by attorney Hone.

{¶ 24} Appellants' attempt to excuse their own neglect by placing the blame on their Nevada attorney is inconsistent with the concept of "excusable neglect" under Civ.R. 60(B). As a general rule, the misconduct of an attorney is imputed to the party who retained the attorney. *Swan v. Swan*, 10th Dist. No. 04AP-1089, 2005-Ohio-4636. In *Swan*, this court explained the rule of imputed misconduct in the context of excusable neglect under Civ.R. 60(B)(1) as follows:

> Because parties to civil actions voluntarily chose their own attorneys, they cannot avoid the consequences of the acts or omissions of their freely-selected representative. [*GTE Automatic Elec., Inc.*] at 152, quoting *Link v. Wabash R.R. Co.*

---

[1] The relevant averments of appellant Fredrick A. Cooper's affidavit mirror those of appellant Katherine Cooper with regard to excusable neglect.

> (1962), 370 U.S. 626, 633-634, 82 S. Ct. 1386, 8 L. Ed. 2d 734. "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer/agent * * * ." *Id.* If an attorney's representation falls substantially below what is reasonable under the circumstances, the client's remedy is against that attorney in a suit for malpractice. *Id.*, quoting *Link*, supra, at 634 fn.10. Any other remedy would amount to "visiting the sins" of the attorney of the moving party upon the innocent party.

Id. at ¶ 10.

{¶ 25} Though appellants did not employ attorney Hone to defend them in the instant litigation, appellants seek to excuse their own failure to obtain counsel or otherwise respond to the motion for summary judgment by pointing the finger at their retained counsel in Nevada. Because appellants voluntarily chose attorney Hone to represent them in their pursuit of insurance coverage, they cannot avoid the consequences of his negligence as it relates to the defense of this action. If attorney Hone's representation in securing coverage fell substantially below what is reasonable under the circumstances, their remedy is against attorney Hone in a suit for malpractice. To conclude that appellants' misplaced reliance on attorney Hone's representations excused appellants' neglect in this case would amount to "visiting the sins" of appellants' Nevada counsel on appellees. *See, e.g., Vanest v. Pillsbury Co.*, 124 Ohio App.3d 525 (4th Dist.1997) (appellant's attorneys alleged preoccupation with another case did not excuse appellant's neglect in failing to oppose appellee's motion for summary judgment); *Brown v. Akron Beacon Journal Publishing Co.*, 81 Ohio App.3d 135 (9th Dist.1991) (out-of-state attorney's failure to timely file opposition to summary judgment due to unfamiliarity with the local rules of court was not excusable neglect); *PHH Mtge. Corp. v. Northup*, 4th Dist. No. 11CA6, 2011-Ohio-6814, ¶ 20 (allowing appellant to escape summary judgment due to the alleged neglect of his attorney in failing to oppose the motion for summary judgment "would be visiting the sins of appellant's attorney upon the appellee"). *But see Bohannan v. Gallager Pipino, Inc.*, 8th Dist. No. 92325, 2009-Ohio-3469 (a party's neglect in failing

to oppose a motion for summary judgment is excusable where the court, in violation of a local rule, grants the motion for leave to file the motion for summary judgment on the same day it grants the motion for summary judgment).

{¶ 26} Appellants allege that they were unable to afford counsel following attorney Lindsmith's withdrawal. Even if we accept this representation as true, appellants have provided no explanation for their own failure to contact the court regarding the status of their case or to check the docket to determine whether any action was required in the six-month period in which they were unrepresented. In the context of relief from judgment, "[a] party involved in litigation cannot simply sit back and claim ignorance of the proceedings." *Northup* at ¶ 22 ("[A]lthough appellant claims that he was unaware of the status of his case or of his attorney's failure to respond to appellee's summary judgment motion, he also had a duty to keep himself informed of the status of the case. His ignorance * * * does not demonstrate excusable neglect."). Rather, "a party to an action must keep himself informed of the status of the case." *Id.*, citing *State Farm Mut. Auto. Ins. Co. v. Peller*, 63 Ohio App.3d 357, 361 (8th Dist.1989). Here, appellants completely disregarded their duty to keep themselves informed of the status of this action after attorney Lindsmith withdrew. It is certainly reasonable to infer from appellants' affidavits that appellants did not intend to take any action with respect to this litigation other than continuing to contact attorney Hone regarding insurance coverage. Such inaction is inexcusable. *See Wells Fargo Bank v. Grutsch*, 5th Dist. No. 14 CAE 100067, 2015-Ohio-4721 (appellants did not establish that their failure to oppose summary judgment was the result of excusable neglect even though it was shown that the motion was not served to counsel's correct mailing address where the record showed that appellants were personally aware of the motion prior to the trial court's ruling).

{¶ 27} The only reasonable conclusion to be drawn from the evidence submitted is that appellants knew they were unrepresented in the litigation from June 2014 when attorney Lindsmith moved to withdraw from the case through January 21, 2015, when the trial court granted appellees' motion for summary judgment. The trial court found that appellants were aware of the August 5, 2014 order permitting their local counsel to withdraw as well as "the importance of the same." (Nov. 13, 2015 trial court decision at 3.) Furthermore, having been served with attorney Lindsmith's motion to withdraw and

memorandum in support, appellants knew in June 2014 that appellees had "recommence[d] the active prosecution of their claims in this matter and [had] served correspondence requesting follow-up information as to written discovery and requesting depositions." (Attorney Lindsmith's Mot. to Withdraw at 2.) Appellants make no effort in their affidavits to rebut the representations made by attorney Lindsmith in his motion for leave to withdraw, including his claim that appellants failed to communicate with counsel and failed to fulfill the terms of engagement. Under such circumstances, appellants' subsequent inaction was inexcusable.

{¶ 28} Appellants claim that certain language in the trial court's decision regarding appellants' "pre-motion delays" and "an inexcusable misuse of process" suggests that the trial court applied an incorrect standard in reviewing their claim of excusable neglect in this case. (Trial court decision at 9, 10.) We interpret the language used by the trial court as a commentary on the merits of appellants' claim of excusable neglect, which the trial court found completely wanting. Moreover, our review of the trial court decision reveals that the trial court applied the correct standard in reviewing appellants' motion for relief from judgment.

{¶ 29} Similarly, appellant Katherine Cooper's bald assertion that "[n]either Fred nor I received Plaintiffs' Motion for Summary Judgment" does not establish excusable neglect. (Katherine Cooper Aff. at 17.) There is no allegation by appellants that appellees improperly served the motion. Appellants admit that "the motion was mailed to our residence in Franklin, Tennessee." (Katherine Cooper Aff. at 17.) Appellants admit to subsequently receiving a copy of appellees' "Notice of Completion of Briefing on Plaintiffs' Motion for Partial Summary Judgment" at the same address. The trial court noted that appellees' counsel represented to the court at the damages hearing that the regular mail containing the motion for partial summary judgment had not been returned undelivered. Appellants do not dispute this representation. Additionally, we note that appellants' February 3, 2015 motion for relief from judgment filed by appellant Fredrick A. Cooper, pro se, fails to mention that neither he nor appellant Katherine Cooper received the

motion for partial summary judgment.[2]   Accordingly, based on the information in the record, we cannot say that the trial court abused its discretion when it disregarded appellants' unsupported allegation that they did not receive the motion for partial summary judgment.

{¶ 30} "Excusable neglect is not present if the party seeking relief could have prevented the circumstances from occurring." *Stuller* at ¶ 52.   Here, appellants could have prevented the circumstances that resulted in the judgment against them by either hiring counsel to represent them in this matter following attorney Lindsmith's withdrawal or by otherwise defending the action.   In our view, the trial court did not abuse its discretion in overruling a Civ.R. 60(B)(1) motion for relief from judgment because it is evident from all the facts and circumstances in the case that the conduct of appellants, combined with the conduct of the person whose conduct is imputed to appellants, exhibited a disregard for the judicial system and the rights of appellees.   *Boling* at ¶ 11, quoting *Griffey* at syllabus.   Under the facts and circumstances of this case, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably in finding that appellants evidenced a complete disregard for the judicial system.

{¶ 31} For the foregoing reasons, appellants' first assignment of error is overruled.

**B.  Second Assignment of Error**

{¶ 32} In appellants' second assignment of error, appellants argue that the trial court erred by not conducting the Civ.R. 60(B) analysis advocated by the Supreme Court in cases involving default judgment.   In *Colley*, the Supreme Court held that when a defendant relies on his insurance carrier to defend the lawsuit after being served with a summons and a complaint alleging a covered claim, the defendant's failure to file an answer or to determine that his carrier has failed to file an answer leading to a default judgment may constitute "excusable neglect" under Civ.R. 60(B) depending on the particular facts and the circumstances of the case.   In concluding that the trial court abused its discretion by not granting relief in the case, the *Colley* court stated the following:

---

[2] In a January 17, 2015 email appellant Fredrick A. Cooper sent to appellees' counsel, appellants acknowledge that they received appellees' "notice of completion of briefing on plaintiff's motion for partial summary judgment."   The email does not mention that appellants never received a copy of the motion for partial summary judgment.

> In our view, the concept of "excusable neglect" must be construed in keeping with the proposition that Civ.R. 60(B)(1) is a remedial rule to be liberally construed, while bearing in mind that Civ.R. 60(B) constitutes an attempt to "strike a proper balance between the conflicting principles that litigation must be brought to an end and justice should be done." 11 Wright & Miller, Federal Practice & Procedure 140, Section 2851, quoted in *Doddridge v. Fitzpatrick* (1978), 53 Ohio St.2d 9, 12. We note that the default judgment was granted within a week of the defendant's failure to file a timely answer or a responsive pleading. Under these circumstances, the inaction of the defendant had not ripened to the point where it could be labeled as a "complete disregard for the judicial system" as condemned in *GTE Automatic Electric*, *supra*, at page 153.
>
> [The] inquiry must of necessity take into consideration all the surrounding facts and circumstances [including] whether the defendant promptly notified his carrier of the litigation[,] * * * the lapse of time between the last day for the filing of a timely answer and the granting of the default judgment[,] * * * the amount of the judgment granted [and] the experience and understanding of the defendant with respect to litigation matters.

*Id.* at 248-49.

{¶ 33} Appellees argue that the *Colley* case is distinguishable on its facts and that the *Colley* factors are not relevant to the analysis under the particular facts of this case. We agree.

{¶ 34} *Colley* involved the entry of a default judgment due to the failure of defendant's insurance carrier to file an answer after having notice of the action against its insured. In this case, appellants retained their own counsel from the outset of this litigation and appellants' insurance carrier never proffered a defense of appellants in this action. Additionally, this litigation had progressed well beyond the pleadings stage and had been pending for nearly two and one-half years when appellees filed their motion for summary judgment. Thus, this case presents significantly different facts and circumstances than *Colley* and those cases applying the *Colley* factors. Appellants have not cited a single case applying the *Colley* factors in the review of a Civ.R. 60(B) motion

claiming that a party's failure to respond to a motion for summary judgment was the result of excusable neglect. Nor has this court found any such case.

{¶ 35} Moreover, in *Colley,* and subsequent cases decided thereunder, the defaulting party did not know that they were unrepresented in the action until they received notice that judgment had been rendered against them. The question in such cases is whether the neglect of the party to either file an answer or determine whether their carrier had done so was excusable or inexcusable under the circumstances of the particular case. Here, appellants were well aware that they were unrepresented in this litigation for more than six months before the trial court rendered judgment against them. As noted above, by the time the trial court entered judgment in this case, appellants had been unsuccessfully seeking coverage for the claims in this case for more than two years. Under the particular facts and circumstances of this case, we find the *Colley* factors are inapplicable.

{¶ 36} For the foregoing reasons, appellants' second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 37} In appellants' third assignment of error, appellants argue that the trial court abused its discretion by failing to hold an evidentiary hearing on appellants' motion for relief from judgment. We disagree.

{¶ 38} " '[A] party who files a Civ.R. 60(B) motion for relief from judgment is not automatically entitled to a hearing on the motion.' " *Hillman v. Edwards*, 10th Dist. No. 14AP-496, 2014-Ohio-5667, ¶ 19, quoting *PNC Bank Natl. Assn. v. Botts*, 10th Dist. No. 12AP-256, 2012-Ohio-5383, ¶ 10, citing *Adomeit v. Baltimore*, 39 Ohio App.2d 97, 105 (8th Dist.1974). " ' "[I]f the Civ.R. 60(B) motion contains allegations of operative facts which would warrant relief from judgment, the trial court should grant a hearing to take evidence to verify those facts before it rules on the motion." ' " *Id.*, quoting *Flagstar Bank, FSB v. Hairston*, 10th Dist. No. 12AP-679, 2013-Ohio-1151, ¶ 12, quoting *Richard* at 151. " ' "Conversely, an evidentiary hearing is not required where the motion and attached evidentiary material do not contain allegations of operative facts which would warrant relief under Civ.R. 60(B)." ' " *Id.*, quoting *Hairston* at ¶ 12, quoting *Richard* at 151.

{¶ 39} The relevant averments of appellants' affidavits do not excuse their conduct in knowingly remaining unrepresented in this action for a period of six or seven months and failing to either oppose a properly served motion for summary judgment or otherwise defend the action. Under the circumstances, the trial court did not abuse its discretion by ruling on appellants' motion without first conducting an evidentiary hearing to determine the truth of the operative facts alleged therein.

{¶ 40} For the foregoing reasons, we overrule appellants' third assignment of error.

## V. CONCLUSION

{¶ 41} Having overruled appellants' three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and HORTON, JJ., concur.

_____